IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES FERGUSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:15-cv-769-GMB |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On August 6, 2012, Plaintiff James Ferguson applied for supplemental security benefits under Title XVI of the Social Security Act, alleging a disability onset date of July 31, 2012. Ferguson's claim was denied at the initial administrative level. Ferguson then requested and received a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 2, 2014, and denied Ferguson's claims on June 23, 2014. Ferguson requested a review of the ALJ's decision by the Appeals Council, and that request was denied on August 21, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of August 21, 2015.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. Based on a careful review of the parties' arguments, the relevant

case law, and the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and based upon the proper legal standards, and is therefore due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more

than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Ferguson bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

3

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Ferguson was 60 years old at the time of the ALJ's decision. R. 45. He is not married, has no children, and lives with his brother in Montgomery, Alabama. R. 153–54. He has a high school diploma and also received training in electronics. R. 45–46. He claims to suffer from residual complications from a stroke that occurred in July of 2012, particularly in the form of weakness in his extremities. R. 82 & 116. The complications allegedly limit his mobility and have caused him to lose some functionality of his right arm and leg. R. 56–67 & 197. Ferguson has not been engaged in traditional employment since

4

he worked for the City of Montgomery in the public works department, a position from which he was terminated in 1998. R. 51–52. Since 1998, Ferguson has been unemployed and has worked "odd jobs" such as yardwork and home maintenance. R. 52–55.

Following an administrative hearing, the ALJ found that Ferguson suffered from the following severe impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c): "acute cerebrovascular accident with mild residual right-sided weakness and other residuals." R. 22. Despite this severe impairment, the ALJ found, at step three of the analysis, that Ferguson did not have an impairment or combination of impairments that meets or medically equals the severity of those listed in the applicable regulations. R. 24. The ALJ further found, at steps four and five, that Ferguson has the residual functional capacity ("RFC") to perform "medium work."[1] R. 24–30. Specifically, the ALJ concluded that Ferguson can perform medium work with the following limitations:

> [The claimant] can sit at least three hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can frequently use his right lower extremity for pushing, pulling, and the operation of foot controls. The claimant can frequently use his right upper extremity for reaching in all directions, pushing, pulling, handling, and fingering. The claimant does not suffer any additional limitation in the use of his extremities. The claimant can occasionally climb ladders, scaffolds, ramps and stairs. The claimant cannot climb ropes or poles. The claimant can frequently stoop, kneel, and crouch. The claimant can occasionally balance and crawl. The claimant can frequently work in humidity, wetness, and extreme temperatures. The claimant can frequently work while exposed

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

5

to dusts, gases, odors, and fumes. The claimant can occasionally work in poorly ventilated areas. The claimant cannot work with operating hazardous machinery. The claimant cannot operate motorized vehicles. The claimant can frequently work while exposed to vibration. The claimant is unable to respond to rapid and/or frequent multiple demands. The claimant is limited to simple, routine, and repetitive work activity.

R. 24. Ultimately, the ALJ concluded that Ferguson was not disabled within the meaning of the Social Security Act from July 31, 2012, his alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied his claims. R. 31.

### IV. DISCUSSION

Ferguson presents four issues on appeal: (1) the ALJ erred in his residual functional capacity assessment; (2) the ALJ failed to satisfy his duty to develop the record fully and fairly; (3) the ALJ erred in his assessment of Ferguson's credibility; and (4) the ALJ should have concluded that Ferguson is disabled under "Grid Rule" 202.04. For the following reasons, the court finds Ferguson's arguments unavailing, and concludes that the ALJ's opinion is supported by substantial evidence.

**A. Residual Functional Capacity Assessment**

"[T]he ALJ has the responsibility for determining a claimant's RFC." *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). There is no requirement that the RFC assessment "be supported by the assessment of an examining or treating physician." *Id.* at

1055–56. Nor is it required that the ALJ "specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013).

Ferguson argues that the RFC assessment is erroneous because the ALJ cherry-picked from the examining physicians' reports any evidence favorable to his conclusion that Ferguson was not disabled, while ignoring evidence supporting a finding of disability. This argument is better characterized as a disagreement with the wisdom of the ALJ's assessment of his RFC—not a basis for concluding that the assessment constituted reversible error. For example, Ferguson contends that the December 14, 2012 report from examining physician Dr. Celtin Robertson is "consistent with an ability to perform less than a [sic] medium [work]" because the ALJ allegedly ignored Dr. Robertson's finding that, with repetition, Ferguson's motor strength decreased in the muscle groups of his right arm and leg. Doc. 18 at 8 (citing R. 394). However, the ALJ acknowledged this reduction in motor strength but found that "the remainder of the claimant's physical examination [by Dr. Robertson] yielded no other abnormalities." R. 28. Similarly, Ferguson claims that the ALJ "mischaracterized" the January 24, 2013 report of Dr. Curry Hammack, a psychologist, by ignoring the fact that the report concluded that Ferguson struggled with sitting and standing, walked with a slow gait, and had slightly delayed language skills and somewhat limited auditory short-term memory. Doc. 18 at 8. Again, Ferguson is mistaken.

The ALJ acknowledged all of these findings before concluding that Dr. Hammack's "otherwise unremarkable objective findings are consistent with the record." R. 29.

Contrary to Ferguson's contentions, the ALJ provided a sufficient rationale to link substantial evidence in the record to the conclusions reached in his RFC assessment. For example, the ALJ discussed in detail Ferguson's hospitalization and treatment in July of 2012, and noted that his condition improved substantially during a course of physical therapy at HealthSouth Rehabilitation from July 31, 2012 to August 8, 2012. R. 27. Specifically, the rehabilitation records indicated that Ferguson's mobility was improving and that he was "modified independent" in most activities of daily living upon his discharge. R. 271. The ALJ noted that Ferguson received a brace from Amedisys Home Health of Montgomery ("Amedisys") due to lingering foot drop and ankle instability, which was designed to stabilize his gait. R. 26, 310. Amedisys provided outpatient physical therapy twice per week for six weeks. The home therapy was apparently successful and Ferguson reported that he had no pain, though "some lingering right-sided weakness" remained. R. 26, 323–82. The ALJ pointed out that an electrocardiogram ("EKG") in November of 2012 demonstrated marked improvement from the EKG taken during his hospitalization in July. R. 27.

Finally, the ALJ discussed the consultative examinations by Dr. Robertson and Dr. Hammack. Ferguson saw Dr. Robertson on December 14, 2012, complaining primarily of weakness in his right arm and leg. R. 391. However, Ferguson also denied difficulty lifting his right arm and leg, and Dr. Robertson indicated that he retained functionality of both extremities with no numbness. R. 391. As the ALJ noted, Dr. Robertson reported that

Ferguson tends to his personal needs, walks daily in the mornings for 30 minutes, performs physical therapy exercises, and completes household chores. R. 391. Dr. Robertson observed that Ferguson was able to walk without assistance, sit without distress, get on and off the exam table, and walk without the previously-prescribed leg brace. R. 392–93. His motor strength was rated a 5 on a scale of 1 to 5, but reduced to a 4 in the right arm and leg with repetition. R. 78. Ferguson's motor skills were intact and he displayed no other abnormalities. R. 391–94. Despite the fact that Dr. Robertson did not offer an assessment of Ferguson's ability to work, the ALJ granted "significant weight" to his report and its "dearth of findings indicating any significant physical abnormalities." R. 27.

On January 24, 2013, six months after his stroke, Ferguson saw Dr. Hammack for a consultative examination. R. 81. Ferguson reported to Dr. Hammack that while "he has gotten much better," his thinking was "clear, but slow." R. 397. He stated that his primary limitations were physical. R. 397. He reported a history of alcohol and illicit drug use. R. 398. Dr. Hammack observed that Ferguson's movements and gait were slow and that he required the use of a cane and assistance from his brother, but that he was making progress and "expects a good recovery." R. 398. His language skills were "slightly delayed," but his focus, concentration, and memory were all rated as "fine." R. 398–99. He also showed "no signs of mental confusion or tangential thinking." R. 399. Dr. Hammack concluded that Ferguson's overall prognosis for continued emotional stability was "good" and assessed a Global Assessment of Functioning ("GAF") score of 65.[2] R. 400. While the

---

[2] The GAF is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Sanders v. Astrue*, 974 F. Supp. 2d 1316, 1319–20 (N.D. Ala. 2013). A GAF score

ALJ stated that Dr. Hammack's GAF score was "directly contradicted by [Ferguson's] denials of any psychological symptoms," he concluded that Dr. Hammack's "otherwise unremarkable objective findings are consistent with the record." R. 28.

The ALJ's assessment that Ferguson could engage in medium work with some limitations is supported by the foregoing substantial evidence. The ALJ provided a sufficient rationale to link substantial evidence in the record to the conclusions he reached by discussing Ferguson's medical evaluations in significant detail and concluding that the medical evidence revealed that Ferguson's "ability to function has [not] been so severely eroded as to preclude all work activity." R. 29. The ALJ considered evidence from Ferguson's hospitalization in July of 2012 through March of 2014, including evidence that was both favorable and unfavorable to his opinion. Ultimately, Ferguson carries the burden of demonstrating the extent of his limitations, and he has failed to show that he is any more limited than reflected in the examinations on which the ALJ explicitly relied. In the absence of such a showing, the court cannot conclude, based on the record evidence cited by the ALJ, that the RFC finding was not supported by substantial evidence. Indeed, the ALJ's opinion demonstrates sufficient evaluation of the medical evidence for the court to conclude that the ALJ considered Ferguson's medical condition as a whole and took his limitations into account when assessing his RFC. *See Packer*, 542 F. App'x at 891–92.

---

of 65 indicates "mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household)." *Mathis v. Astrue*, 2008 WL 876955, at *7 n.4 (M.D. Fla. Mar. 27, 2008) (citing AMERICAN PSYCHIATRIC ASSOCIATION, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 1994)). The ALJ is not required to rely on a GAF score in his decision. *Sanders*, 974 F. Supp. 2d at 1320.

**B.      Duty to Develop the Record**

Next, Ferguson contends that the ALJ failed to fulfill his duty to develop the record fully and fairly.  Specifically, because the two examining physicians did not offer an opinion regarding Ferguson's exertional limitations, "the ALJ erred in failing to either order another consulting examining evaluation or call[] on the services of a medical expert to testify." Doc. 18 at 11.  Of course, as already discussed, "it is not necessary for the ALJ's [RFC] assessment to be supported by the assessment of an examining or treating physician." *Eaton*, 180 F. Supp. 3d at 1055–56.  In any event, the court concludes that the ALJ fully and fairly developed the record.

The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).  Indeed, "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'" *Castle*, 557 F. App'x at 854 (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)).

In this case, the record contained sufficient evidence supporting the ALJ's opinion. The objective medical evidence demonstrated that Ferguson's condition improved substantially over time, that he did not complain of pain, and that he performed exercise and activities of daily living.  Dr. Robertson reported that he was mobile and that his motor skills were intact, while Dr. Hammack concluded that he did not have any significant

cognitive limitations. R. 391–94 & 397–400. The ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [Ferguson's] RFC" by considering Ferguson's entire medical history and offering a detailed analysis of the specific record evidence that supported his RFC assessment. *See Castle*, 557 F. App'x at 853–54. Accordingly, because the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ here was not required to order a consultative examination to obtain a physician's assessment of Ferguson's RFC. *See Ingram*, 496 F.3d at 1269.

C.  **Assessment of Ferguson's Credibility**

Ferguson contends that his statements regarding the residual effects of his stroke are "credible and supported by the record," and that he has "[n]ever exaggerated his physical limitations." Doc. 18 at 14. Ferguson again articulates disagreement with the ALJ's findings without demonstrating how those findings are legally erroneous. In fact, Ferguson acknowledges that the ALJ offered specific reasons in support of his credibility finding, but contends that these reasons do not "accurately reflect the actual record." Doc. 18 at 12.

In *Wilson v. Barnhart*, the Eleventh Circuit reviewed its test for the establishment of disability based on subjective testimony about pain and other symptoms:

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). Once an impairment is established, "all evidence about the intensity, persistence, and functionally limiting effects of pain and other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561 (citing 20 C.F.R. § 404.1529).

> When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's "daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms."

*Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 947 (11th Cir. 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted). Of course, "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citation omitted).

Here, the ALJ determined that Ferguson's impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." R. 25. Further, the ALJ evaluated Ferguson's complaints in conjunction with the medical evidence of record, and considered the factors discussed above in the process of articulating explicit and adequate reasons for discrediting Ferguson's testimony. R. 25–30. For example, the

ALJ documented Ferguson's medical treatment from the date of his stroke until the date of the hearing. He explained that Ferguson's activities of daily living, including performing household chores, walking 30 minutes each morning, reading, and performing physical therapy revealed significant improvement in his condition. R. 27 & 29; *see* R. 391.

The ALJ also considered the location, duration, frequency, and intensity of Ferguson's symptoms—namely, residual weakness in his right arm and leg. The ALJ noted that Ferguson was mobile and was aided by the use of an ankle brace. R. 28. He cited Dr. Robertson's report, which indicated that Ferguson had regained functionality in his right arm and leg without numbness. R. 391. The ALJ also considered a function report Ferguson submitted on September 6, 2012, which included complaints about his physical and mental limitations. R. 26; *see* R. 195–208. In the report, Ferguson claimed difficulties with certain activities of daily living and alleged that he has to use his left hand for many tasks due to weakness in his right hand. R. 197. He also stated that he cannot walk without his walker. R. 200. However, the ALJ pointed out that many of these contentions were contradicted by later medical reports or statements from Ferguson himself. *E.g.*, R. 391 ("A typical day he takes care of personal needs in the morning. He prepares breakfast and cleans room. He walks in the mornings daily about half an hour."); R. 393 ("He still uses the brace indoors and outdoors but [it is] not currently necessary to walk."); R. 394 ("Motor strength is 5/5 in both upper and lower extremity muscle groups."); R. 398–99 (stating that Ferguson's focus, concentration, and memory were "fine," while his fund of general information was "adequate" and his level of abstraction was "fair").

Finally, the ALJ reviewed the remainder of the factors discussed in *Leiter*. He observed that Ferguson's condition is aggravated by walking long distances and lifting heavy objects but that, according to the medical records and Ferguson's own testimony, his condition has improved significantly over time. *E.g.*, R. 27. The ALJ discussed Ferguson's prescribed medication, but noted that he has not complained of side effects. R. 28; *see* R. 408–09 & 455–62. Moreover, the ALJ discussed Ferguson's physical therapy and the positive effect it appeared to have on his strength and abilities, based on the record. *See* R. 26–28. Thus, because the ALJ's findings with regard to Ferguson's credibility were clearly articulated and supported by substantial evidence in the record, the court concludes that the ALJ's credibility determination did not constitute reversible error.

**D.     Grid Rule 202.04**

Finally, Ferguson argues that the ALJ should have concluded that he was disabled based on the Medical Vocational Guidelines of Appendix 2 (commonly known as the "Grids"). Doc. 18 at 14. Specifically, Ferguson contends that because he requires the use of a cane, he would not be able to perform a full range of light work as defined by the Social Security Administration's regulations. Doc. 18 at 14. The Commissioner argues that the Grids apply where the claimant has only exertional limitations, and that Ferguson has alleged both exertional and nonexertional limitations here. Doc. 19 at 13. The Commissioner also argues that Ferguson's argument is predicated on the contention that he can only perform light—and not medium—work. Doc. 19 at 15.

According to the Grids, a person is disabled if he is 55 years of age or older, has a high school diploma, past work that is unskilled, and is limited to light work. *See* 20 C.F.R.

§ 404, subpt. P, app. 2; *Roark v. Comm'r of Soc. Sec.*, 2015 WL 1288140, at *4 (M.D. Fla. Mar. 20, 2015) ("Taking into account that Plaintiff has a high school diploma, past work that is unskilled, at age 55 the Grids dictate a finding of disability even if Plaintiff possessed the capacity to perform light work."). Therefore, even in the event the court determined that Ferguson claimed only exertional limitations, his argument would be unpersuasive because the court has concluded, for the reasons already stated, that the ALJ's RFC assessment of his ability to perform medium work was supported by substantial evidence. Accordingly, as this court is prohibited from reweighing the evidence, the court concludes that the ALJ did not commit reversible error in failing to apply Grid Rule 202.04 to find that Ferguson is disabled.

## V. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is AFFIRMED. A final judgment will be entered separately.

DONE this 6th day of June, 2017.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE